```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON
```

JAMES E. PYLES,                       )
                                      )
                                      )   Civil Action No. 5:08-97-JMH
       Plaintiff,                     )
                                      )
v.                                    )
                                      )
                                      )   **MEMORANDUM OPINION AND ORDER**
STATE FARM MUTUAL AUTOMOBILE          )
INSURANCE COMPANY,                    )
                                      )
       Defendant.                     )

                     **      **      **      **      **

This matter is before the Court on Defendant's Motion for Summary Judgment [Record No. 21]. Plaintiff has responded [Record No. 22], and Defendant has filed a Reply [Record No. 23]. The Court being sufficiently advised, this motion is ripe for decision.

**I.   BACKGROUND**

On February 24, 1993, Plaintiff Pyles was employed as a cable splicer for the local phone company. On that day, Pyles and his co-worker were working together in a residential neighborhood to restore phone service following an ice storm. As he crossed the street, Pyles alleges that an unidentified motorist, traveling in reverse, struck him in the hip and injured him. Although the timing of the events related next is disputed, it is clear that Pyles filed a police report of the incident, sought treatment for his injuries and was diagnosed with a hip contusion at an Urgent

-1-

Treatment Center, and informed his supervisor of the incident. Sometime between February 24, 1993, and March 12, 1993, Pyles also reported the incident to his automobile insurer, Defendant State Farm, and on March 12, 1993, State Farm employee Lisa Moore elicited Pyles' recorded statement concerning the incident.

Pyles also reports that he sought treatment for his injuries from 1993 through 1995 from his family physician, Dr. James Stalker, now deceased. Notably, Pyles claims he complained of back pain during that period.[1] In May 1995, Pyles saw Dr. James Bean of Neurosurgical Associates, complaining of back pain in his lower back and informing Dr. Bean that he had been experiencing pain since his February 1993 injury. Dr. Bean recommended and performed discectomy and fusion surgery at the L5-S1 level of Pyles' lumbar spine on May 31, 1995, at St. Joseph Hospital.[2]

Following recovery from surgery, Pyles was cleared to return to work on August 14, 1995, with no restrictions. He continued to

---

[1] Defendant complains in a conclusory fashion that there are no available records of Pyles' treatment with Dr. Stalker from this time period, but Defendant has not outlined its efforts to obtain the records that it claims to be so critical to its defense of this matter. Rather, Defendants refers to Plaintiff's testimony that he does not know where those records are maintained or how to obtain them. The Court is, however, able to piece together that Dr. Stalker was associated with Central Kentucky Family Practice, based in Nicholasville, Kentucky, and with whom Pyles' current family doctor, Susan E. Neil, was formerly associated.

[2] While St. Joseph Hospital maintained microfilms of the surgical records, State Farm claims that it has been unable to obtain any medical bills or other documents showing the cost of the surgery.

work uninterrupted until 2004 when he suffered a new work injury, falling from a ladder, injuring his lower back, neck, and shoulder. Then, in July 2005, a motorist rear-ended Pyles, causing further injury to his lower back. Perhaps as proof of the adage that bad things come in threes, while recovering from that motor vehicle accident, Pyles suffered an ankle fracture and a subsequent knee injury which required surgery.

Pyles filed this suit against State Farm on July 31, 2007, claiming uninsured motorist's benefits for the February 1993 accident. He alleges that the 1993 accident led to his 1995 surgery and caused him permanent injury, ultimately leading to his retirement in 2005. In its Motion, Defendant argues that the doctrine of laches should bar Plaintiff's claim since its ability to produce evidence to defend itself has been prejudiced since Pyles waited fourteen-and-a-half years to sue Defendant and claim benefits as a result of his injuries sustained during the 1993 accident. Defendant argues that laches applies because, in that lengthy time period, key medical records and bills have disappeared, important employment records have been lost, Pyles' treating physician has died, and the memories of other witnesses have faded. For the reasons which follow, Defendants' Motion shall be denied.

**II.   STANDARD OF REVIEW**

The decision of whether to permit a claim to proceed upon an

assertion of laches is within this Court's discretion. *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir. 2007). "When the record before the district court on a motion for summary judgment shows factual issues in dispute that could affect the equity of the application of laches to bar the claim, the district court must deny the motion and permit the parties to present their proof." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001) (citing *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.,* 630 F.2d 1155, 1164 (6th Cir. 1980)).

### III. DISCUSSION

The task presented to this Court is to determine whether the doctrine of laches bars Plaintiff's claim for breach of a written contract of insurance where he delayed filing suit for fourteen-and-a-half-years. Laches is:

> . . . the "negligent and unintentional failure to protect one's rights." [*Elvis Presley Enterprises, Inc. v.*] *Elvisly Yours* [*Inc.*], 936 F.2d [889,] . . . 894 [(6th Cir. 1991)]. A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it. *See Induct-O-Matic Corp. v. Inductotherm Corp.,* 747 F.2d 358, 367 (6th Cir. 1984). There is a strong presumption that a plaintiff's delay in bring suit for monetary relief is not unreasonable as long as the analogous statute of limitations has not lapsed. *See Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365-66 (6th Cir. 1985). "Only rarely should laches bar a case before the analogous statute has run." *Id.* at 366.

-4-

*Herman Miller, Inc.*, 270 F.3d at 320-21.

In this instance, Pyles filed his lawsuit for breach of a written contract of insurance within the applicable fifteen-year statute of limitations. *See Gordon v. Kentucky Farm Bureau Ins. Co.*, 914 S.W.2d 331, 332-33 (Ky. 1995) (fifteen-year statute of limitations for general actions on a written contract provided for in KRS 314.090(2) applies in disputes over first-party UM coverage). Thus, the Court indulges in a strong presumption that Pyles' delay in bring suit for monetary relief is not unreasonable. *See Tandy Corp.* 769 F.2d at 365-66.

Defendant State Farm argues, however, that the fourteen-and-a-half-year delay places it at a disadvantage because the earliest records of Plaintiff's treatment at the Urgent Treatment facility, save one record, and those of his treatment under the care of Pyles' now-deceased family doctor, Dr. James Stalker, are no longer available. State Farm claims that, as a result, it has no way of validating or invalidating Plaintiff's allegation that he complained of back pain immediately following the 1993 accident and, thereafter, intermittently, to Dr. Stalker. Defendant also argues that it has lost any ability to impeach Pyles' testimony at trial in the absence of those records. Similarly, Defendant argues that in the absence of medical bills from that time period and those related to Pyles' 1995 surgery, State Farm is unable to validate or disprove the amount of medical expense incurred by

Plaintiff during the period claimed, even if it could be established that Plaintiff's injuries resulted from an event covered by the insurance policy.

There is no evidence, however, that Defendant State Farm has attempted to obtain Dr. Stalker's medical records, for example by means of a subpoena directed to Stalker's former practice. Further, Plaintiff has stated (without objection from Defendant) that at least some medical bills from a variety of sources related to Plaintiff's treatment over the years are available among the evidence in this case and will be presented by Plaintiff at trial. Considering these facts, the Court cannot say that Defendant State Farm has been placed at a disadvantage by Plaintiff's delay in bringing his claim that would warrant barring Plaintiff's pursuit of his claim.[3]

---

[3] It is unclear whether the parties agree that Plaintiff filed a "claim" for benefits or whether Defendant is taking the position that Plaintiff never filed a UM claim as provided for in Plaintiff's contract of insurance with Defendant. Nonetheless, the Court also finds State Farm's position that Plaintiff's present action is too little, too late and that it has been placed at a disadvantage in litigation by virtue of Plaintiff's failure to raise a claim earlier to be disingenuous. For example, in its Reply, State Farm takes the position that:

> Pyles was seemingly aware of his rights under his policy because he contacted State Farm following the 1993 accident. He chose not to file a claim at that time, and instead waited nearly 15 years. There is no evidence that State Farm caused this delay. And because Pyles did not assert a claim in 1993, State Farm had no reason to conduct an investigation of his claim.

If anything, Plaintiff's potential for success on his claim may be more compromised than Defendant's defense. Plaintiff should be concerned by the absence of or the limited amount of medical evidence to corroborate his own testimony concerning the physical injuries of which he claims to have suffered in the years immediately following the 1993 accident and the longitudinal course or cost of treatment which allegedly resulted from the February 1993 accident. In the absence of treatment records or bills which substantiate the benefits he might be due, Plaintiff's ability to demonstrate breach of a contract to pay benefits or to demonstrate damages to a jury is itself limited. With this in mind, the Court encourages the parties to meet and negotiate in good faith to reach a settlement of this matter.

Accordingly, **IT IS ORDERED** that Defendant's Motion for Summary Judgment shall be, and the same hereby is, **DENIED.**

This 26th day of May, 2009.



Signed By:
Joseph M. Hood
Senior U.S. District Judge

---

[Reply, Record No. 23, at 2.] State Farm concedes that Pyles did call his insurer, State Farm, and advise it of the incident, whether or not this qualifies as a "claim" under the terms of the Policy. State Farm went so far as to appoint someone to follow up with Pyles and record an interview concerning the incident. State Farm was, itself, for lack of a better word, investigating Plaintiff's claim in 1993.